## 58304. JACKSON et al. v. WILSON.

CARLEY, Judge.

Appellee is an Atlanta police officer. He became a target of the investigation into the 1975 Atlanta Police Department promotional examination "cheating scandal." After a preliminary investigation, appellee was ordered by the police commissioner to submit to a polygraph examination pursuant to General Order 17 of the Bureau of Police Services. General Order 17 provides, inter alia, for the following procedures: "[A]ll sworn and unsworn Bureau employees to undergo a polygraph examination as part of an administrative investigation when requested . . . No examination results will be revealed to anyone other than the examinee, those conducting the investigation, and those determining the misconduct of an employee. Any employee refusing to take such an examination, when given a direct order to do so, will be charged with insubordination." Appellee reported for the polygraph test and was presented with a form the execution of which was the examiner's precondition to administration of the test. It read: "I hereby, without force, duress, threats, coercion or promise of reward or immunity, submit to a polygraph examination and hereby release ———— the examinee

[sic] administering this examination and his consulting examiner from all claims resulting from or arising out of this examination. I understand that this test cannot be conducted without my knowledge, consent, cooperation, that the door of the examining room is not locked and that I may terminate the interview and examination at any time and that as such my taking of the examination is a strictly voluntary act on my part. I further authorize the examiner to release the results of this examination only to the special co-counsel appointed by the Mayor to conduct an investigation." Appellee refused to sign this form for two reasons. First, he contended that because he was submitting to the polygraph examination as the result of a direct order from the commissioner under penalty of insubordination for failure to comply, he could not execute a form which denominated the submission as "voluntary." Second, appellants had not given him assurances, as evidenced by a suggested form statement he had sent to them for their execution, that the results of his examination would be kept confidential within the terms of General Order 17. Appellee reaffirmed his willingness to undergo the polygraph test but refused to execute the form. The examiner, however, refused to administer the test without appellee's signature on the statement and, thus, no examination was given.

Appellee was thereupon charged with violating various rules and regulations of the Atlanta Police Department and of the Bureau of Police Services. After a hearing before the disciplinary panel, he was found guilty of violating two such rules on the basis of his "refusal" to submit to the polygraph examination and demoted in rank and suspended for fifteen days. Appellee appealed to the City of Atlanta Civil Service Board which, after hearing argument and considering the record, voted to uphold his demotion and suspension. Appellee then filed a petition for writ of certiorari. The superior court found there was "no evidence whatsoever that [appellee] refused to take the polygraph examination but did on more than ten occasions state that he was present for the purpose of submitting to said examination," that the examination "was not given [appellee] by the examiner, although [appellee] was willing to submit to same," that neither

General Order 17 nor any law required, under the circumstances, the execution of a prior release and waiver, that the examiner's prior release and waiver statement was repugnant and that appellee was not required to execute it and that the decision that appellee had refused to obey the order to submit to the examination "was completely without any evidence to support same whatsoever and that as a result, was contrary to law." Appellee's petition for certiorari was sustained and appellants were ordered to restore appellee to his previous rank and reimburse him for lost pay. Appellants appeal.

1. We view the sole issue in this case, as apparently have all prior tribunals, to be whether appellee's refusal to execute the form statement presented to him by the polygraph examiner was a refusal to obey a direct order to submit to the examination. Does General Order 17 contemplate, as an element of compliance, the execution of a statement that the examinee is undergoing the examination "voluntarily"? As noted, General Order 17 requires all employees of the bureau to undergo a polygraph test when given a direct order to do so or suffer a charge of insubordination upon refusing. General Order 17 does not, therefore, contemplate that an employee who has been ordered to take the test voluntarily "consent" thereto but that he merely "submit." "If the resistance to the consummation of the act was prevented because of threats or other conduct, we do not think it may be said that the act done was voluntary, although the party seemingly assented." "'Voluntary' . . . means, 'Proceeding from the will; unconstrained by interference; unimpelled by another's influence; spontaneous.' " " '[T]here is a decided difference in law between mere submission and actual consent, . . . "consent" differs very materially from "assent." The former implies some positive action and always involves submission. The latter means passivity or submission, which does not include consent.' " *Perryman v. State,* 63 Ga. App. 819, 822-823 (12 SE2d 388) (1940). Thus, execution of a statement that a polygraph test is undergone "voluntarily" is not contemplated within the very meaning of General Order 17. It, therefore, follows that refusal to execute such a statement would not be a refusal to obey the order to undergo the

examination. The order contemplates submission to the test, not voluntary consent thereto. Of course, one who receives an order to take the examination may still "voluntarily consent" to it and thus choose to sign the statement. We do not believe, however, that one who has been given such an order is *required* to execute the statement or be found to have "refused" to obey the order to "submit" to the polygraph test.

The uncontroverted evidence shows that appellee did not refuse to submit to the test. At all times he expressed his willingness to do so. He merely refused to execute the examiner's statement which would have denominated his submission as "without force, duress, threats, coercion or promise of reward or immunity . . . a strictly voluntary act." The mere refusal to execute such a document by one undergoing the test pursuant to a direct order made under General Order 17 could not be construed to be a refusal to obey the order itself. The certiorari was properly sustained. *Russell v. Abbott,* 91 Ga. 178 (2) (16 SE 1005) (1893).

2. Appellants urge that there was evidence that appellee violated Rule 1.38.C of the Rules and Regulations of the Atlanta Bureau of Police Services: "Obeying Lawful Order of Superiors: An officer will not willfully or intentionally disobey the lawful order of a superior officer. An officer who is given an order that conflicts with a bureau rule, regulation, order of procedure, or with a previous order given by a superior officer in high authority will promptly and respectfully call the conflict to the [attention of the] superior officer giving the current order. If the superior officer, after having been advised of the conflict does not withdraw or modify the order to avoid conflict, such order will be obeyed and the superior officer giving the order will be responsible for any conflict arising therefrom." Appellants, however, totally fail to indicate in what manner the evidence demonstrates that appellee violated this rule. The only order from a superior officer given to appellee was the order, made pursuant to General Order 17, from the commissioner that appellee undergo the polygraph examination. We are cited by appellants to no bureau rule, regulation, order of procedure, or previous order of a superior officer with

which the commissioner's order was in "conflict." There was no order of a superior officer that appellee execute the polygraph examiner's statement. General Order 17 does not itself require the execution of such a statement. The only order appellee was given was to undergo the examination. The only issue was whether refusal to designate his compliance with that order as "voluntary" was a refusal to obey that order. We do not believe that Rule 1.38.C is applicable to the facts here so as to change the resolution of that issue as discussed in Division 1, supra.

3. Appellants urge that it was error to make a final decision in the case — restoring appellee to his previous rank and reimbursing him for lost pay. It is argued that, under the circumstances, remanding the case was the proper disposition. Code Ann. § 19-501.

Admittedly the cases construing this Code section as to when a final decision in a case brought to the superior court on certiorari is proper almost defy harmonization. However, we are persuaded, after careful consideration, that no error is shown in the instant case. There were no questions of disputed facts, the sole question being whether, under the undisputed evidence, appellee could be found guilty of violating certain rules and regulations and whether the finding of his guilt was contrary to law. *Treadwell v. City of Social Circle,* 103 Ga. App. 673 (120 SE2d 195) (1961). "The undisputed evidence in this case makes a question of law to be passed upon. It was therefore not error for the court, in sustaining the certiorari, to render final judgment. [Cits.]" *Wilson v. C. & S. Bank,* 23 Ga. App. 654 (2) (99 SE 239) (1919). In sustaining the certiorari the trial judge properly held that the law forbids a finding that appellee's refusal to sign the polygraph examiner's statement under the circumstances was a refusal to obey an order to take the polygraph test itself; this would be true regardless of what testimony may be adduced should the case be remanded. See *Atlantic Coast Line R. Co. v. Thomas,* 12 Ga. App. 209 (77 SE 13) (1913). As the only issue was, therefore, one of law, final judgment was not erroneously rendered. See generally *Central of Ga. R. Co. v. Willingham,* 8 Ga. App. 817 (70 SE 214) (1911).

*City of Atlanta v. Whitten,* 144 Ga. App. 224 (240 SE2d 771) (1977), is distinguishable. That case, unlike the instant appeal, involved issues of fact and the credibility and impeachment of witnesses — questions which a judge hearing a case on certiorari may not resolve but which are for the lower tribunal. *Mitchell v. Western & A. R. Co.,* 66 Ga. 242 (1880). Here the facts were undisputed and the case turns purely on the application to those facts of the correct principles of law. A final decision was, therefore, not erroneous under Code Ann. § 19-501.

*Judgment affirmed. Deen, C. J., and Shulman, J., concur.*

ARGUED SEPTEMBER 4, 1979 — DECIDED NOVEMBER 9, 1979.

*Ferrin Y. Mathews, W. Roy Mays, III,* for appellants. *Joe Salem,* for appellee.